**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DISTRICT**

| | | |
|---|---|---|
| SNUGGLYCAT INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-03110-SRB |
| | ) | |
| OPFER COMMUNICATIONS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED ANSWER OF DEFENDANT MARCI BOWLING**

Defendant Marci Bowling, for her Amended Answer to Plaintiff SnugglyCat Inc.'s Complaint, states as follows:

**PARTIES**

1.      Plaintiff, SnugglyCat, Inc. ("SnugglyCat") is a New York corporation with its principal place of business in Gilboa, New York. Fred Ruckel and Natasha Ruckel are the owners of SnugglyCat.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and, accordingly, denies same.

2.      Defendant Opfer Communications, Inc. ("Opfer Communications") is a Missouri corporation with its principal place of business at 2861 S Meadowbrook Avenue, Springfield, Missouri 65807.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and, accordingly, denies same.

3.      Defendant Scott Opfer ("Opfer") is a citizen of Missouri who presently resides at 4462 E Farm Road, Springfield, Missouri 65809. Opfer is the owner and director of Opfer Communications.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and, accordingly, denies same.

4. Defendants Krissy Bernhardi, Chris Louzader, Rob White, Lori Robertson and James Barton are employees of Opfer Communications.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and, accordingly, denies same.

5. Defendant Doug Schaen was an employee of 'The Bargain Show' owned and operated by Opfer Communications. Doug Schaen is half-brother to Scott Opfer.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and, accordingly, denies same.

6. Defendant Marci Bowling is a person of influence running a local, well known not-for-profit cat organization. Marci Bowling provided a false and fabricated testimonial on a national television commercial to help sell the non-existent Purr N Play product.

**ANSWER**: In response to the allegations in Paragraph 6, Defendant admits that she runs Watch Over Whiskers, a local not-for-profit cat rescue organization, but deny the remaining allegations.

7. The Bargain Show, LLC, [is] a Missouri Limited Liability Company, with a principal place of business located at 3645 S. Culpepper Circle, Springfield, MO 65804.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and, accordingly, denies same.

2

## JURISDICTION AND VENUE

8.     This Court has jurisdiction because this action arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq. (the "Lanham Act"), and jurisdiction is specifically conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court further has jurisdiction because this is an action between citizens of different states in which the value of the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332. Jurisdiction for the Missouri common law claims is conferred in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**ANSWER**:     In response to the allegations in Paragraph 8, Defendant admits that this Court has jurisdiction over Plaintiff's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 & 1338(a)-(b), and over Plaintiff's Missouri common law claims pursuant to 28 U.S.C. § 1367(a), but denies that diversity jurisdiction exists over any of Plaintiff's claims because the amount in controversy does not exceed $75,000.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(1) as Defendants reside in and are subject to jurisdiction in this district.

**ANSWER**:     Defendant denies the allegations in Paragraph 9.

## FACTS

### SnugglyCat and the Ripple Rug® Mark

10.     Fred Ruckel and Natasha Ruckel are the owners of SnugglyCat. Fred Ruckel ("Ruckel") is the inventor of a product designed to provide entertainment and enrichment for cats that is sold and marketed under the Ripple Rug® trademark and service mark. SnugglyCat is the sole owner of Federal Trademark Registration No. 4912510 for the Ripple Rug mark and logo design, published on the Federal Principal Register with a first use date of April 1, 2015.

**ANSWER**:     In response to the allegations in Paragraph 10, Defendant admits that SnugglyCat Inc. is the registered owner of Federal Trademark Registration No. 4912510 for the Ripple Rug logo design only, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same.

11.     SnugglyCat launched the Ripple Rug® in September of 2015 to great fanfare, selling it online, and on QVC, an online shopping network. It was featured on The TODAY Show and it won numerous awards for its unique design.

**ANSWER**:     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and, accordingly, denies same.

12.     The Ripple Rug® consists of two pieces of carpet: a bottom half lined with a thermally insulating non-slip coating and a top half that allows "ripples" to be created.  Holes located in the top rug allow a cat to interact with toys, their owners and other companion animals. The Ripple Rug® carpet is made using recycled materials.

4

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and, accordingly, denies same.

13. The Ripple Rug product is depicted below:



**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and, accordingly, denies same.

14. Ripple Rug® is a high-quality, US-made product that is fun for cats and convenient for their owners, made using recycled materials.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and, accordingly, denies same.

15. SnugglyCat provides employment for as many as 120 US workers, at ten companies, across four states, to make its Ripple Rug product.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and, accordingly, denies same.

16. SnugglyCat is the owner of an active federal trademark registration for the Ripple Rug® with the United States Patent and Trademark Office, Registration Number 4912510, Registration Date March 8, 2016.

**ANSWER**: In response to the allegations in Paragraph 16, Defendant admits that SnugglyCat Inc. is the registered owner of Federal Trademark Registration No. 4912510 for the Ripple Rug logo design only, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same.

17. SnugglyCat has continuously used and advertised the Ripple Rug® throughout the United States.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, accordingly, denies same.

18. SnugglyCat's Ripple Rug® mark distinguishes its product from similar products and is widely known and recognized by consumers.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and, accordingly, denies same.

19. SnugglyCat sells the Ripple Rug® throughout the United States, internationally, online and in brick and mortar stores.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and, accordingly, denies same.

20. SnugglyCat sells the Ripple Rug® through a variety of online platforms, including its own websites: ripplerug.com and snugglycat.com, as well as on Amazon.com, eBay and Walmart marketplaces.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, accordingly, denies same.

21.    SnugglyCat has spent substantial sums of money developing and market-ing the Ripple Rug®.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and, accordingly, denies same.

22.    Prior to the conduct of the Defendants explained herein, the Ripple Rug® was the No. 1 Best Seller on Amazon.com in the "Cat Bed Mats" category, achieving sales in excess of $500,000 on Amazon.com alone.   An average of 3,900 Ripple Rug units per quarter were sold during 2016.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and, accordingly, denies same.

23.    In light of the Plaintiff's success with its Ripple Rug® product, Plaintiff became a target for unscrupulous individuals and entities who wished to take a free ride on the goodwill, reputation and fame the Plaintiff has built up in its product and its intel-lectual property. In particular, starting in late 2015, Rutledge & Bapst, a direct response television marketer, and B & D Solutions, a Florida company that works in online direct response telemarketing entered into a scheme to pass off the Plaintiffs' Ripple Rug prod-uct as their knock-off version of the product, called Purr N Play. Among other things, Rutledge & Bapst, and B&D Solutions created a website, purrnplaysale.com, which dis-played plaintiff's photographs of its Ripple Rug and contained plaintiff's marketing lan-guage.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and, accordingly, denies same.

24.     During December 2015, just three months after the Ripple Rug was launched on national TV, Plaintiff noticed a significant drop in sales-growth.  On information and belief, the sales growth declined during the holiday season of 2015, due to an email blast sent by Rutledge & Bapst and B&D Solutions. The email blast was sent to 963,026 targeted recipients starting on Friday December 4th, 2015.  The email blast directed recipients to the purrnplaysale.com website.  The website contained not only the plaintiff's photographs and marketing language, but also photos of the Ripple Rug.  Upon information and belief, Rutledge & Bapst and B&D Solutions had never produced the Purr 'n Play.  They sent the email merely to determine the extent of consumer interest in the product.  They took orders for the Purr N Play based on responses to the emails and took credit card information, but never produced the product or fulfilled those orders.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and, accordingly, denies same.

25.     After the email blast was sent in December 2015 and the successful order-collecting web-test of the PurrNPlaysale.com website was completed; in or around August, 2016, Opfer Communications, Rutledge & Bapst, and B&D Solutions entered into a Product Promotion Agreement. Scott Opfer signed the agreement on behalf of Opfer Communications. They agreed to share profits equally. It was agreed that Opfer would write the script and shoot the infomercial. Rutledge & Bapst planned to sell 100,000 knock-offs ordered from a Chinese factory. Rutledge & Bapst expected to have samples from the Chinese factory to use in the infomercial. However, since the Chinese factory were unable to produce a satisfactory replica of the Purr N' Play on time for the shoot of

the infomercial, Rutledge & Bapst and Opfer Communication agreed that they would use the Ripple Rug instead.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and, accordingly, denies same.

26.    Thereafter, Opfer Communications worked with Rutledge & Bapst and B&D Solutions to create a nationwide advertising campaign purporting to sell the competing "Purr N Play" product. Opfer Communications, in conjunction with Rutledge and B & D Solutions, developed commercials, a website, and a social media campaign which incorporated SnugglyCat's Ripple Rug® to sell the alleged Purr N Play product to consumers. The three parties agreed to enter into the same scheme against two other product manufacturers as well.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and, accordingly, denies same.

### Defendants' Scheme to Pass Off The Ripple Rug® As Their Own Product

27.    In 2016, Defendants created an infomercial that marketed what was purported to be the Purr N Play but was actually Plaintiff's Ripple Rug. The commercials constituted false advertising because they misrepresented the product sold and they included false testimonials. The testimonials were false because, upon information and belief, the Purr N Play did not exist at the time of the infomercials so, the testimonials had to be about the Ripple Rug.

**ANSWER**:    In response to the allegations in Paragraph 26, Defendant denies that she created an infomercial for the Purr N Play product, and denies knowledge or in-

formation sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same.

28.     Upon information and belief, Defendants never produced or sold the Purr N Play but they created the false infomercial and marketing assets to destroy Plaintiff's sales so that it would be forced to sell its business, or its brand and inventory, to Defendants.

**ANSWER**:     In response to the allegations in Paragraph 28, Defendant admits that she never produced or sold the Purr N Play product, but denies the remaining allegations.

29.     During February 2017, once again the Plaintiff's sales experienced a significant drop in demand. Between February 2nd and February 15th, 2017, Defendants aired its false infomercial for Purr N Play on national and local TV throughout the United States. The infomercial included false representations and it attempted to pass off the Ripple Rug as Defendants' Purr N Play. Sales of Ripple Rugs continued to be lower than expected in the following months, due to the impact of the Purr N Play Campaign, consumer confusion and the availability of a 75% cheaper version of the Plaintiff's 'Ripple Rug', which clearly enticed budget-sensitive consumers.

**ANSWER**:     In response to the allegations in Paragraph 29, Defendant denies that she aired any infomercial for the Purr N Play product, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same.

30.     Defendant intentionally and knowingly used in commerce the reproductions, copies and/or colorable imitation of the Plaintiff's copyrighted images in connec-

10

tion with the sale, offering for sale, distribution, or advertising of Defendant's goods. Defendants thereupon offered, advertised, and promoted products bearing the Ripple Rug® Registered Trademark.

ANSWER: Defendant denies the allegations in Paragraph 30.

31. Defendants colluded to make an inferior version of the Ripple Rug product in China. Whereas, the Ripple Rug is manufactured in the USA, using recycled materials; thereby making it a costly product to manufacture in the United States. The Chinese version as quoted from the factory was to create 100,000 counterfeit / knockoffs at a price of $4.70 per unit whereas plaintiffs product as shown in the Infomercial cost more than $15 per unit to make in the USA.

ANSWER: In response to the allegations in Paragraph 31, Defendant denies that she colluded to make any version of the Ripple Rug product in China or elsewhere, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same.

32. Defendants' actions stalled SnugglyCats Ripple Rug sales, insofar as to have impacted layoffs at the factory, as SnugglyCat's volume could no longer be sustained due to defendants' aforementioned actions.

ANSWER: Defendant denies the allegations in Paragraph 32.

33. Scott Opfer is the owner of Opfer Communications. Upon information and belief, the Opfer Communications' business focuses on the Direct Response ("DRTV") marketing industry.

ANSWER: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and, accordingly, denies same.

11

34. During the latter half of 2016 and January 2017, Opfer Communications copied Plaintiff's marketing materials to develop and produce a television Infomercial that purported to be for the Purr N Play product. The production value of the Purr N Play Infomercial was about $30K.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and, accordingly, denies same.

35. Scott Opfer directed his employees to fabricate false advertising claims in the Infomercial, citing a fictitious reference to 'Veterinary Grade Material'. Scott Opfer knew that the statement was false.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and, accordingly, denies same.

36. Defendant Chris Louzader was the Production Manager for the false infomercial. In this capacity, she posted a casting call on Facebook to solicit individuals to bring their cats to participate in the infomercial, she participated in the filming of the infomercial, and she participated in the fabrication of testimonials for the infomercial.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and, accordingly, denies same.

37. Defendant Rob White was the Creative Director for the false infomercial. In this capacity, he participated in writing the script for the infomercial, participated in acquiring the false testimonials for the infomercial, and directed the infomercial, including directing how the product was to be used in the filming of the infomercial to showcase specific features from the Ripple Rug campaign.

12

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 and, accordingly, denies same.

38. Defendant Lori Robertson was the Studio Manager for Opfer Communications. In that capacity, she copied information directly from the Ripple Rug website to the script for the false infomercial and obtained and/or created the Purr N Play logo for use on the infomercial.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and, accordingly, denies same.

39. Social media influencer and non-profit organizer of Watching over Whiskers, Marci Bowling, provided kittens to be featured in the commercial and appeared in the Infomercial, delivering a fraudulent testimonial, claiming that her cats loved the Purr N Play product. During the Infomercial, Marci Bowling's kittens are seen playing in the Plaintiff's Ripple Rug product. This was a fraudulent testimonial because Ms. Bowling claimed that her cats loved Purr N Play when they had never seen a Purr N Play, they had used only the Ripple Rug.

**ANSWER**: In response to the allegations in Paragraph 39, Defendant admits that she is the founder of Watching Over Whiskers, a non-profit cat rescue organization, that she provided the kittens featured in the infomercial, and that she provided a testimonial for the product, but deny the remaining allegations.

40. The Infomercial also contained a second fraudulent "customer testimonial" delivered by Krissy Bernhardi, an employee of Opfer Communications and the producer of this video Infomercial. A screen shot of Ms. Bernhardi in the video is set forth below.

13



**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and, accordingly, denies same.

41.    The Purr N Play Infomercial was filmed on the Opfer Communications 'Bargain Show' stage. The Bargain Show studio was created to simulate one of the stages used by QVC to sell products on live television. At the time of filming of the Purr N Play Infomercial, SnugglyCat's Ripple Rug was sold out on QVC. Similarities between the Bargain Show set and the QVC set are strikingly familiar. Any viewer could easily be deceived and confuse the Bargain Show Studio set for a QVC on-air set, for the sold out product.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and, accordingly, denies same.

42.    When the production of the Purr N Play infomercial was nearing completion, the Plaintiff received an email from Doug Schaen (Scott Opfer's halfbrother), repre-

14

senting the Bargain Show (a wholly-owned subsidiary of Opfer Communications), soliciting from Plaintiff the opportunity to sell the Ripple Rug on the Bargain Show. Plaintiff did not respond.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and, accordingly, denies same.

43.    Doug Schaen followed up with the Plaintiff a second time on January 27th 2017 to solicit Ruckel to sell on "The Bargain Show." Once more, the plaintiff did not respond. The Bargain Show's studio set is also located in, and share the same office premises as, Opfer Communication.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and, accordingly, denies same.

44.    The product used, demonstrated and filmed during the Purr N Play Infomercial was the Plaintiff's Ripple Rug. During the Infomercial, the Ripple Rug® mark was visible on the product. A frame from the Infomercial is depicted below, with a magnified view. The label visible in this frame contains the Ripple Rug® Mark.



**ANSWER**:     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 and, accordingly, denies same.

45.     The Defendants' infomercial avoided stating any specific dimensions of the Purr N Play. Neither the final Infomercial voice-over, nor the accompanying informational on-screen graphics state any dimensions. While the Infomercial featured the Plaintiff's Ripple Rug, the actual dimensions of the counterfeit versions of Purr N Play prototyped by, or on behalf of Defendants, were significantly smaller (25%) than the Plaintiff's Ripple Rug featured in the Infomercial, thereby baiting consumers with a larger Ripple Rug product with the intent to ship a much smaller Purr N Play product. This 'bait

16

and switch' constitutes false advertising. Opfer Communications wrote the script for the Infomercial.

**ANSWER**:   In response to the allegations in Paragraph 45, Defendant denies that she produced an infomercial, that she prototyped a version of the Purr N Play product, or that a version of the Purr N Play was prototyped on her behalf. Defendant denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same.

46.    The Infomercial included a forced upsell to get a second product for free. Consumers were unable to purchase only one Purr N Play product. Opfer's Purr N Play Infomercial script states: "Call now and as a special bonus we'll double the offer and send a second Purr N Play to use at home or to give as a gift…and it's your FREE, just pay separate processing and handling."

**ANSWER**:   Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 and, accordingly, denies same.

47.    The Defendants' Infomercial script, read by their voice-over artist, also pushes the competitive pricing offer: "Get TWO Purr N Plays, an $80 value, yours for just $19.95". The $80 value pricing is a direct comparison to the Plaintiff's Ripple Rug product pricing of $40 each.

**ANSWER**:   Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 and, accordingly, denies same.

48.    As part of the process to initiate the rollout of the Purr N Play campaign on local/national TV, James Barton (the editor at Opfer Communications) uploaded the

17

final Purr N Play master Infomercial to Extreme Reach (a Media-Trafficking Company), on January 19th, 2017.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and, accordingly, denies same.

49.    On information and belief, 12 versions of the Purr N Play TV commercial (each including different phone numbers) were created, with the aim of tracking buying patterns across the USA. On information and belief, the Infomercial aired locally in various market and nationally on TV during February 2nd – 15th 2017.

**ANSWER**:    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 and, accordingly, denies same.

50.    Ispot TV metrics indicated that the fraudulent Purr N Play product TV Infomercial was aired nationally, receiving over 200,000 impressions during the first six days of the campaign. Television air-time was targeted at a demographic of senior citizens, during shows such as: Bonanza and Murder Mysteries on the Hallmark channel. The fabricated on-screen testimonials, (provided by Marci Bowling and Krissy Bernhardi) featured women in their late forties, speaking in positions of authority. Their testimonials were targeted to senior ladies.

**ANSWER**:    In response to the allegations in Paragraph 50, Defendant denies that her testimonial was fabricated and that she is in her late forties, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same.

51.    The Plaintiff was contacted by multiple senior citizens, (via email and phone-calls), over age 60, confused by the television advertisement. One senior asked for

a refund, as they felt they purchased the Plaintiff's Ripple Rug product and were some-what confused when they discovered that they had ordered the Purr N Play from someone else. In one instance, a senior, aged 70, shared his Purr N Play order confirmation which not only included the forced upsell, but also included a 'deluxe' version, without specif-ics pertaining to a 'deluxe' model, e.g.: no specific size information.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 and, accordingly, denies same.

52. Defendants' bait and switch advertising and direct marketing was aimed to capture senior citizens' credit card information without inventory to ship, nor a source to procure inventory to ship as it was a wholly fraudulent advertisement.

**ANSWER**: Defendant denies the allegations in Paragraph 52.

53. During the February, 2017 rollout of the Purr N Play Campaign, the Purr N Play product was also marketed using the website PurrNPlay.com. The product that appeared on the Purr N' Play website, was in fact, the Plaintiff's Ripple Rug.

**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and, accordingly, denies same.

54. The pictures displayed on the PurrNPlay.com website were produced, photographed and delivered by Opfer Communications. Digital Target Marketing incor-porated those pictures into the fraudulent Purr N Play product website as part of the na-tionwide roll out of the fraudulent marketing campaign. Additionally, Opfer Communica-tions' Producer Krissy Bernhardi is featured on the Purr N Play website.

Case 6:18-cv-03110-SRB   Document 49   Filed 07/30/18   Page 19 of 30



**ANSWER**:  Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 and, accordingly, denies same.

55. The Purr N' Play was also marketed through multiple fraudulent review websites. The websites featured false consumer validation of the non-existent Purr N' Play product. The pictures displayed on these fraudulent websites were produced by Opfer Communications. An example of one such review website showing the Ripple Rug product but advertising it as a Purr N Play is shown below.



**ANSWER**: Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 and, accordingly, denies same.

56.     As part of their three-way agreement, Defendants, either directly or through Rutledge and Bapst, further enticed customers into purchasing the Purr N Play product, through Google "adword" advertisements (as seen below):



**ANSWER**:     Defendant denies the allegations in Paragraph 56.

57.     Defendant, either directly or through others marketed the Purr N Play product on Facebook using a photograph of Plaintiff's Ripple Rug® which was digitally retouched to remove the Ripple Rug logo. In one instance, Producer Krissy Bernhardi asked James Barton if he could digitally add a cat's head and make it poke out of a hole on each shot, in this way, resembling many the Plaintiff's Ripple Rug product images. The original and digitally retouched image, with added cat are depicted below:



**ANSWER**:     Defendant denies the allegations in Paragraph 57.

58.     SnugglyCat and Ruckel sent a cease and desist letter to Opfer Communications, on February 23rd, 2017.

**ANSWER**:     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 and, accordingly, denies same.

59.     The Defendants responded to the Plaintiff's Cease and Desist letter on March 1, 2017, stating that "Opfer Communications has discontinued all efforts to market, promotion and sale of its PURR N PLAY™ product". However, the deceptive Purr N Play product Infomercial, described above, can still be found online www.ispot.tv/brands/ngm/purr-n-play.

**ANSWER**:     In response to the allegations in Paragraph 59, Defendant denies that she responded to the Plaintiff's Cease and Desist letter on March 1, 2017, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, accordingly, denies same

60. As a result of Defendants' aforementioned acts, namely, unfair competition and false advertising, Defendants' customers and potential customers have been and/or are likely to be, confused as to the source of Defendants' products and/or deceived as to the nature and characteristics of the products sold by Defendants.

ANSWER:    Defendant denies the allegations in Paragraph 60.

61. Defendants' unfair competition, via bait-and-switch tactics, as well as false advertising, have caused and will continue to cause irreparable harm to SnugglyCat and the goodwill it owns in the Ripple Rug® mark. SnugglyCat has experienced a reduction in sales as a result.

ANSWER:    Defendant denies the allegations in Paragraph 61.

## COUNT I
## (TRADEMARK INFRINGEMENT WITH A
## COUNTERFEIT MARK, 15 USC §§ 1114 AND 1125)

62. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 61 above.

ANSWER:    Defendant incorporates its responses to the above Paragraphs.

63. As discussed above, Plaintiff's registered trademark and service mark was visible in Defendants' advertisements of Defendants' product, which were played in various TV markets around the U.S. Defendants, therefore, used Plaintiff's exact design and word trademark in commerce connection with the advertising and sale, offering for sale, distribution and advertising of Defendants' product, in such a way as to likely cause confusion or mistake or to deceive consumers as to origin, sponsorship and approval of Defendants' product, all in violation of 15 USC §§ 1114 and 1125.

ANSWER:    Defendant denies the allegations in Paragraph 63.

24

64. Defendants' use of Plaintiff's exact design and work trademark in connection with the advertising and sale of Defendants' product constitutes a counterfeit use as defined by 15 USC § 1116(d).

**ANSWER**:    Defendant denies the allegations in Paragraph 64.

65. Defendants' use of Plaintiff's registered trademark and service mark caused actual damages to Plaintiff, including lost sales resulting from marketplace confusion.

**ANSWER**:    Defendant denies the allegations in Paragraph 65.

66. Defendants' use of Plaintiff's registered trademark and service mark caused, and is likely to cause irreparable harm to Plaintiff.

**ANSWER**:    Defendant denies the allegations in Paragraph 66.

67. Defendants actions were intentional and willful in that they knew their actions would be likely to cause confusion, misstate and deception among consumers. Defendants' willfulness makes this case an exceptional case, entitling Plaintiff to enhanced damages and attorneys' fees.

**ANSWER**:    Defendant denies the allegations in Paragraph 67.

## COUNT II
## (PASSING OFF IN VIOLATION
## OF SECTION 43(A) OF THE LANHAM ACT)

68. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

**ANSWER**:    Defendant incorporates its responses to the above Paragraphs.

69. By using Plaintiff's product in Defendants' Infomercials, websites and social media sites, Defendants passed off, and attempted to pass off, Plaintiff's Ripple Rug as Plaintiff's Purr N' Play.

**ANSWER**:    Defendant denies the allegations in Paragraph 69.

70.    Defendants' aforesaid use of the SnugglyCat Ripple Rug® in connection with the sale of the Purr N' Play advertising is likely to cause confusion or mistake or to deceive as to the affiliation, connection, or association of Defendants with SnugglyCat, as to the origin, sponsorship, or approval of Defendants' goods, in that purchasers are likely to have believed that Plaintiff authorized or controlled the sale, offering, or provision of Defendants' goods, or that Defendants were associated with or authorized by Plaintiff to sell, offer, or provide those goods.

**ANSWER**:    Defendant denies the allegations in Paragraph 70.

71.    Defendants' actions, thus, constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants actions were intentional and willful in that they knew their actions would be likely to cause confusion, misstate and deception among consumers. Defendants' willfulness makes this case an exceptional case, entitling Plaintiff to enhanced damages and attorneys' fees.

**ANSWER**:    Defendant denies the allegations in Paragraph 71.

## COUNT III
## (FALSE ADVERTISING IN VIOLATION
## OF SECTION 43(A) OF THE LANHAM ACT)

72.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 71 as if fully set forth herein.

**ANSWER**:    Defendant incorporates its responses to the above Paragraphs.

73.    As discussed above, Defendants falsely advertised the cat entertainment product in their marketing campaign known as the Purr N' Play when in reality the product in Defendants' advertisement was SnugglyCat's Ripple Rug® product.

**ANSWER**:    Defendant denies the allegations in Paragraph 73.

26

74. As discussed above, Defendants used bait and switch techniques and false misrepresentations to deceive customers. Defendants' actions deceived, had the tendency to deceive, and/or are likely to deceive consumers.

**ANSWER**: Defendant denies the allegations in Paragraph 74.

75. The resulting deception caused by the Defendants' claims are material, in that the Defendants' claims were likely to influence the purchasing decision of purchasers of such cat entertainment products.

**ANSWER**: Defendant denies the allegations in Paragraph 75.

76. Defendants' commercial advertising constituted a false and/or misleading statement of fact that misrepresents the nature, qualities, and characteristics of their products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER**: Defendant denies the allegations in Paragraph 76.

77. Defendants' acts greatly and irreparably damaged SnugglyCat and will continue to so damage SnugglyCat unless restrained by this Court; wherefore, Snuggly-Cat is without an adequate remedy at law.

**ANSWER**: Defendant denies the allegations in Paragraph 77.

### COUNT IV
### (UNFAIR COMPETITION UNDER MISSOURI COMMON LAW)

78. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 77 as if fully set forth herein.

**ANSWER**: Defendant incorporates its responses to the above Paragraphs.

79. Defendants' actions described above of trademark infringement, passing off and false advertising all constitute unfair competition under Missouri law.

**ANSWER**: Defendant denies the allegations in Paragraph 79.

27

80. Defendants' actions were intentional, and Defendants acted with evil motive or with reckless indifference to the rights of others. Defendants showed complete indifference or conscious disregard for the rights of others. Defendants' actions entitle Plaintiff to punitive damages.

**ANSWER**: Defendant denies the allegations in Paragraph 80

### AFFIRMATIVE DEFENSES

1. Plaintiff's Complaint fails to state a claim against Defendant for which relief may be granted.

2. Plaintiff's claims are barred in whole or in part because Defendant made no use in commerce of Plaintiff's trademark or any reproduction, counterfeit, copy, or colorable imitation thereof.

3. Plaintiff's claims are barred in whole or in part because there is no likelihood of confusion, mistake, or deception resulting from any use made by Defendant of Plaintiff's trademark or any reproduction, counterfeit, copy, or colorable imitation thereof.

4. To the extent Plaintiff is asserting a claim for profits and damages under Section 32(1)(b) of the Lanham Act, 15 U.S.C. § 1114(1)(b), such claim is barred because Defendant did not act with knowledge that any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's trademark was intended to be used in commerce to cause confusion, to cause mistake, or to deceive.

5. Plaintiff's claim for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is barred because Defendant did not engage in commercial advertising or promotion.

6.      Plaintiff's claims are barred in whole or in part because any alleged injury suffered by Plaintiff is the result of actions of third parties.

7.      Plaintiff's claim for profits and damages is barred or limited to the extent Plaintiff's claimed profits or damages are duplicative of amounts already recovered by Plaintiff through settlement of claims against Rutledge & Bapst, Inc., and/or Ronald Steblea arising from the same alleged conduct.

8.      Plaintiff's claims are barred by the doctrine of release in that the Plaintiff released "any and all past or present claims" relating to their prior lawsuit over the Purr N' Play as part of their settlement agreement with Rutledge & Babpst, Inc., and Ronald Steblea.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff's Complaint, and Plaintiff not being entitled to any relief whatsoever, Defendant requests judgment in its favor and against Plaintiff as follows:

(a)      Dismissing Plaintiff's Complaint in its entirety and with prejudice;

(b)      Denying all relief requested in Plaintiff's Complaint;

(c)      Awarding Defendant its costs and expenses incurred in connection with this action;

(d)      Declaring that this case is exceptional and awarding Defendant its attorney's fees as the prevailing party pursuant to 15 U.S.C. § 1117(a); and

(e)      Any other and further relief that the Court deems just and proper.

Respectfully submitted,

LATHROP GAGE LLP

By: /s/ Bernard J. Rhodes
    Bernard J. Rhodes (MO #29844)
    Eric Sidler (MO #69531)
    2345 Grand Blvd., Ste. 2800
    Kansas City, MO  64108
    Tele:   816-292-2000; Fax:   816-292-2001
    Email:  brhodes@lathropgage.com
           esidler@lathropgage.com

    ATTORNEYS FOR DEFENDANTS
    OPFER COMMUNICATIONS, INC.,
    SCOTT OPFER, MARCI BOWLING,
    KRISSY BERNHARDI, CHRIS LOUZA-
    DER, ROB WHITE, LORI ROBERTSON,
    JAMES BARTON, THE BARGAIN
    SHOW, LLC, AND MARCI BOWLING

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above pleading was filed on this 30th day of July, 2018, using the Court's ECF system, which will generate notice to the following counsel of record:

Steven H. Schwartz
Brown & James, P.C.
800 Market Street, 11th Floor
St. Louis, MO  63101

and

Jessica Pfau
Paula Brillson Phillips
Phillips & Pfau, LLP
817 Broadway
New York, NY  10003

    /s/Bernard J. Rhodes
    An Attorney for Defendants Opfer Communications, Inc., Scott Opfer, Krissy Bernhardi, Marci Bowling, Chris Louzader, Rob White, Lori Robertson, James Barton, The Bargain Show, LLC, and Marci Bowling

30