# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SNUGGLYCAT INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 6:18-cv-03110-SRB |
| OPFER COMMUNICATIONS, INC. | ) | |
| SCOTT OPFER, LORI ROBERTSON, | ) | **PLAINTIFF DEMANDS A JURY TRIAL** |
| and THE BARGAIN SHOW, LLC, | ) | **ON ALL ISSUES** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Comes now Plaintiff SnugglyCat Inc. ("SnugglyCat" or "Plaintiff"), and for its First Amended Complaint against Defendants states the following:

## PARTIES

1.    SnugglyCat is a New York corporation with its principal place of business in Gilboa, New York. Fred and Natasha Ruckel are the owners of SnugglyCat.

2.    Defendant Opfer Communications, Inc. ("Opfer Communications") is a Missouri corporation with its principal place of business at 2861 S Meadowbrook Avenue, Springfield, Missouri 65807.

3.    Defendant Scott Opfer ("Opfer") is a citizen of Missouri who presently resides at 4462 E Farm Road, Springfield, Missouri 65809. Opfer is the owner and director of Opfer Communications.

4.    Defendant Lori Robertson ("Robertson") is an employee of Opfer Communications.

CORE/3508316.0002/142123725.1

5. Defendant The Bargain Show, LLC ("The Bargain Show", together with Opfer Communications, Opfer, and Robertson, the "Defendants"), is a Missouri limited liability company, with its principal place of business at 3645 S. Culpepper Circle, Springfield, MO 65804,. Opfer Communications is an 80% owner of The Bargain Show.

## JURISDICTION AND VENUE

6. This Court has jurisdiction, because this action arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.* (the "Lanham Act"), and jurisdiction is specifically conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court further has jurisdiction under 28 U.S.C. § 1332, because this is an action between citizens of different states in which the value of the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Jurisdiction for the Missouri common law claims is conferred in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(1), because Defendants reside in and are subject to jurisdiction in this district.

## FACTS

### SnugglyCat and the Ripple Rug® Mark

8. Fred and Natasha Ruckel are the owners of SnugglyCat. Fred Ruckel ("Ruckel") invented a product designed to provide entertainment and enrichment for cats that is sold and marketed under the Ripple Rug® trademark and service mark. SnugglyCat is the sole owner of Federal Trademark Registration No. 4912510 for the Ripple Rug mark and logo design, published on the Federal Principal Register with a first use date of April 1, 2015.

2

9. SnugglyCat launched the Ripple Rug® in September of 2015 to great fanfare, selling it online, and on QVC; an online shopping network. It was featured on The TODAY Show, and it has won numerous awards for its unique design.

10. The Ripple Rug® consists of two pieces of carpet: a bottom half lined with a thermally insulating non-slip coating and a top half that allows "ripples" to be created. Holes located in the top rug allow a cat to interact with toys, their owners and other companion animals. The Ripple Rug® carpet is made using recycled materials.

11. The Ripple Rug product is depicted below:



12. Ripple Rug® is a high-quality, US-made product that is fun for cats and convenient for their owners, and the carpet is made from recycled materials.

13. The manufacture of the Ripple Rug and its raw materials utilizes over 120 US workers at 10 companies in 4 states.

14. SnugglyCat is the owner of an active federal trademark registration for the Ripple Rug® with the United States Patent and Trademark Office, Registration Number 4912510, Registration Date March 8, 2016.

3

15.     SnugglyCat has continuously used and advertised the Ripple Rug® throughout the United States.

16.     SnugglyCat's Ripple Rug® mark distinguishes its product from similar products and is widely known and recognized by consumers.

17.     SnugglyCat sells the Ripple Rug® throughout the United States and internationally, both online and in brick-and-mortar stores.

18.     SnugglyCat sells the Ripple Rug® through a variety of online platforms, including its own websites: ripplerug.com and snugglycat.com, as well as on Amazon.com, eBay and Walmart marketplaces.

19.     SnugglyCat has spent substantial sums of money developing and marketing the Ripple Rug®.

20.     Prior to the conduct of the Defendants explained herein, the Ripple Rug® was the No. 1 Best Seller on Amazon.com in the "Cat Bed Mats" category, achieving sales in excess of $500,000. In 2016, SnugglyCat sold an average of 3,900 Ripple Rug units per quarter.

21.     In light of SnugglyCat's success with its Ripple Rug® product, Plaintiff became a target for unscrupulous individuals and entities who wished to take a free ride on the goodwill, reputation and fame SnugglyCat has built up in its product and its intellectual property. In particular, starting in late 2015, Rutledge & Bapst, a direct response television marketer, and B & D Solutions, a Florida company that works in online direct response telemarketing, entered into a scheme to pass off SnugglyCats' Ripple Rug product as their knock-off version of the product, called Purr N Play. Among other things, Rutledge & Bapst, and B&D Solutions created a website, purrnplaysale.com, which displayed SnugglyCats's photographs of its Ripple Rug and contained SnugglyCat's marketing language.

4

22.     In December 2015, just three months after the Ripple Rug was launched on national TV, Plaintiff noticed a significant drop in sales growth. Upon information and belief, the sales growth declined during the holiday season of 2015, due to an email blast sent by Rutledge & Bapst and B&D Solutions. The email blast was sent to 963,026 targeted recipients starting on Friday, December, 2015. The email blast directed recipients to the purrnplaysale.com website. The website contained not only SnugglyCat's photographs and marketing language, but also included photos of the Ripple Rug. Upon information and belief, Rutledge & Bapst and B&D Solutions had never produced the Purr N Play. They sent the email merely to determine the extent of consumer interest in the product. They took orders for the Purr N Play based on responses to the emails and took credit card information, but never produced the product or fulfilled those orders.

23.     After sending the email blast in December 2015 and completing the successful order-collecting web-test of the PurrNPlaysale.com website, in or around August 2016, Opfer Communications, Rutledge & Bapst, and B&D Solutions entered into a Product Promotion Agreement (the "Three-Way Agreement"). Scott Opfer, first contacted by Rutledge & Bapst and B&D Solutions in February 2016, signed the Three-Way Agreement on behalf of Opfer Communications. The three companies agreed to share profits equally. It was further agreed that Opfer would write the script and shoot the Purr N Play infomercial. Rutledge & Bapst planned to sell 100,000 knock-offs manufactured by Chinese factory. Rutledge & Bapst expected to have samples from the Chinese factory to use in the infomercial. However, because the Chinese factory failed to produce a satisfactory Purr N Play in time to shoot the infomercial, Rutledge & Bapst and Opfer Communication agreed to use the Ripple Rug in the infomercial instead.

5

24. Thereafter, Opfer Communications worked with Rutledge & Bapst and B&D Solutions to create a nationwide advertising campaign purporting to sell the competing "Purr N Play" product. Opfer Communications, in conjunction with Rutledge and B & D Solutions, developed commercials, a website, and a social media campaign which incorporated SnugglyCat's Ripple Rug® to sell the alleged Purr N Play product to consumers. The three parties agreed to enter into the same scheme against two other product manufacturers as well.[1]

### Defendants' Scheme to Counterfeit and Pass Off The Ripple Rug® As Their Own Product

25. In 2016, Defendants created an infomercial that marketed what was purported to be the Purr N Play but actually was Plaintiff's Ripple Rug. The commercials constituted false advertising, because they misrepresented the product sold and included false testimonials. The testimonials were false because, upon information and belief, the Purr N Play did not exist at the time of the infomercials so, the testimonials had to be about the Ripple Rug.

26. Upon information and belief, Defendants never produced or sold the Purr N Play. Rather, Defendants created the false infomercial and marketing assets to destroy Plaintiff's sales to force Plaintiff to sell its business, or its brand and inventory, to Defendants.

27. During February 2017, once again SnugglyCat's sales experienced a significant drop in demand. From February 2 through February 15, 2017, Defendants aired its false infomercial for Purr N Play on national and local TV throughout the United States. The infomercial included false representations, and it attempted to pass off the Ripple Rug as Defendants' Purr N Play. Sales of Ripple Rugs dwindled in the following months, due to the impact of the Purr N Play Campaign, consumer confusion and the availability of a 75% cheaper version of SnugglyCat's 'Ripple Rug', which would entice budget-sensitive consumers.

---

[1] Defendants' executed the same fraudulent scheme with respect to the Mighty Shower and Draft Defender products; such products were part of the Three-Way Agreement.

6

28.     Defendants intentionally and knowingly used in commerce the reproductions, copies and/or colorable imitation of SnugglyCat's copyrighted images in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods. Defendants thereupon offered, advertised, and promoted products bearing the Ripple Rug® Registered Trademark.

29.     Defendants colluded and conspired to make and market an inferior version of the Ripple Rug product in China. Whereas, the Ripple Rug is manufactured in the USA, using recycled materials; thereby making it a costly product to manufacture in the United States. The Chinese version as quoted from the factory was to create up to 100,000 counterfeit / knockoffs at a price of $4.70 per unit whereas SnugglyCat's product as shown in the infomercial cost more than $15 per unit to make in the USA.

30.     Defendants' actions stalled Ripple Rug sales, and impacted layoffs at the factory. SnugglyCat's volume could no longer be sustained due to Defendants' aforementioned actions.

31.     Opfer owns Opfer Communications. Upon information and belief, Opfer Communications' business focuses on the Direct Response ("DRTV") marketing industry.

32.     During the latter half of 2016 and January 2017, Opfer Communications copied Plaintiff's marketing materials to develop and produce an infomercial for the purported Purr N Play product. The production value of the Purr N Play infomercial was about $30K.

33.     Opfer directed his employees and others to fabricate false advertising claims in the infomercial, even citing a fictitious reference to 'Veterinary Grade Material'. Opfer knew that the statement was false.

34.     Chris Louzader was the Production Manager for the false infomercial. In this capacity, she posted a casting call on Facebook to solicit individuals to bring their cats to

CORE/3508316.0002/142123725.1

participate in the infomercial, participated in the filming of the infomercial, and participated in the fabrication of testimonials for the infomercial.

35.     Rob White was the Creative Director for the false infomercial. In this capacity, he participated in writing the script for the infomercial, participated in acquiring the false testimonials for the infomercial, and directed the infomercial, including directing how the product was to be used in the filming of the infomercial to showcase specific features from the Ripple Rug campaign.

36.     Robertson was the Studio Manager for Opfer Communications. In that capacity, she copied information directly from the Ripple Rug website to include in the script for the false infomercial and obtained and/or created the Purr N Play logo for use on the infomercial.

37.     Marci Bowling, a social media influencer and non-profit organizer of *Watching over Whiskers*, provided kittens to be featured in the commercial and appeared in the infomercial, delivering a fraudulent testimonial, claiming that her cats loved the Purr N Play product. During the infomercial, Marci Bowling's kittens play in SnugglyCat's Ripple Rug product. Ms. Bowling falsely and fraudulently claimed that her cats loved Purr N Play, although both Ms. Bowling (and her cats) had only seen a Ripple Rug.

38.     The infomercial also contained a second fraudulent "customer testimonial" from Krissy Bernhardi, an Opfer Communications employee and the producer of the infomercial. A screen shot of Ms. Bernhardi in the video is set forth below.

CORE/3508316.0002/142123725.1



39.     The Purr N Play infomercial was filmed on the Opfer Communications 'Bargain Show' stage. The Bargain Show studio, located in the same office building as Opfer Communications, imitates one of the stages used by QVC to sell products on live television. At the time of filming of the Purr N Play infomercial, SnugglyCat's Ripple Rug was sold out on QVC. Similarities between The Bargain Show set and the QVC set are strikingly. Any consumer could easily be deceived and confuse The Bargain Show studio set for a QVC on-air set, where the Ripple Rug product was actually sold.

40.     Near completion of the infomercial, Plaintiff received an email from Doug Schaen (Opfer's step-brother), representing The Bargain Show (of which Opfer Communications is an 80% owner) and soliciting from Plaintiff the opportunity to sell the Ripple Rug on The Bargain Show. Plaintiff did not respond.

41.     Doug Schaen followed up with Plaintiff a second time on January 27, 2017 to solicit Ruckel to sell on "The Bargain Show." Once more, Ruckel did not respond.

9

42.     Upon information and belief, The Bargain Show knew that the other Defendants sought to use SnugglyCat's Ripple Rug in the infomercial and assisted in their efforts to wrongfully use the Ripple Rug and its images in the infomercial shot on a The Bargain Show set.

43.     The product used, demonstrated and filmed during the Purr N Play Infomercial was SnugglyCat's Ripple Rug. During the Infomercial, the Ripple Rug® mark was visible on the product. A frame from the Infomercial is depicted below, with a magnified view. The label visible in this frame is the Ripple Rug® Mark.



44.     The Defendants' infomercial never provided specific dimensions of the Purr N Play. While the infomercial featured SnugglyCat's Ripple Rug, the actual dimensions of the counterfeit versions of Purr N Play prototyped by, or on behalf of Defendants, were significantly smaller (25%) than SnugglyCat's Ripple Rug featured in the Infomercial, thereby baiting

10

consumers with a larger Ripple Rug product with the intent to ship a much smaller Purr N Play product. This 'bait and switch' constitutes false advertising. Opfer and Opfer Communications wrote the script for the infomercial.

45.    The infomercial included a forced upsell to get a second product for free. Consumers were unable to purchase only one Purr N Play product. Opfer's Purr N Play infomercial script states: "Call now and as a special bonus we'll double the offer and send a second Purr N Play to use at home or to give as a gift...and it's your FREE, just pay separate processing and handling."

46.    The Defendants' infomercial script, read by their voice-over artist, also pushes the competitive pricing offer: "Get TWO Purr N Plays, an $80 value, yours for just $19.95". The $80 value pricing is a direct comparison to SnugglyCat's Ripple Rug product pricing of $40 each.

47.    As part of the process to initiate the rollout of the Purr N Play campaign on local/national TV, James Barton (an editor at Opfer Communications) uploaded the final Purr N Play master infomercial to Extreme Reach (a Media-Trafficking Company), on January 19, 2017.

48.    On information and belief, 12 versions of the Purr N Play TV infomercial were created, with the aim of tracking buying patterns across the USA. On information and belief, the Infomercial aired in various markets on TV, both locally and nationally, during February 2 – 15, 2017.

49.    Ispot TV metrics indicated that the fraudulent Purr N Play product TV infomercial received over 200,000 impressions during the first six days of the campaign. Television air-time targeted a demographic of senior citizens, during shows such as: Bonanza and Murder Mysteries on the Hallmark Channel. The fabricated on-screen testimonials (from Marci Bowling and

11

Krissy Bernhardi) featured women in their late forties, speaking in positions of authority. Their testimonials were targeted to senior ladies.

50.    Multiple senior citizens (over age 60) contacted Plaintiff via email and telephone expressing confusion about the infomercial.  One such senior even asked Plaintiff for a refund. She believed that she had purchased SnugglyCat's Ripple Rug product, but had actually ordered the Purr N Play. Another senior, aged 70, shared his Purr N Play order confirmation with SnugglyCat.  It not only included the forced upsell, but also included a 'deluxe' version, without specifics pertaining to a 'deluxe' model.

51.    Defendants' bait and switch advertising and direct marketing was aimed to capture senior citizens' credit card information; such campaign was conducted without inventory to ship or a source to procure inventory to ship; it was a wholly fraudulent advertisement.

52.    During the February 2017 rollout of the Purr N Play Campaign, the Purr N Play product was also marketed using the website PurrNPlay.com. The product that appeared on the Purr N Play website, was in fact, SnugglyCat's Ripple Rug.

53.    The pictures displayed on the PurrNPlay.com website were produced, photographed and delivered by Opfer Communications. Digital Target Marketing incorporated those pictures into the fraudulent Purr N Play product website as part of the nationwide roll out of the fraudulent marketing campaign. Opfer Communications' producer Krissy Bernhardi is even featured on the Purr N Play website.

12



54.     Defendants also marketed the Purr N Play through multiple fraudulent review websites. The websites featured false consumer validation of the non-existent Purr N Play product. Opfer Communications produced the pictures displayed on these fraudulent websites. Below is an example of one such review website.  It advertises the Purr N Play using the Ripple Rug Product.

13

CORE/3508316.0002/142123725.1



55.     As part of the Three-Way Agremeent, Defendants, either directly or through

Rutledge and Bapst, further enticed customers into purchasing the Purr N Play product, through

Google "adword" advertisements (as seen below):

14



RE: Rutledge & Bapst / Purr N Play – site live notice

Ryan Bocken <IMCEAEX-_O=MEX02_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+2€
Friday, February 3, 2017 at 11:29 AM
To: Anne Mullen; search@digitaltargetmarketing.com; payoutchanges@digitaltargetmarketing.com
Cc: Bridget Oconnor; Jeff O'Connor

We are live on Google & Bing for search! Thanks, Ryan

56.     Defendants, either directly or through others, marketed the Purr N Play product on Facebook using a photograph of Plaintiff's Ripple Rug®, which was digitally retouched to remove the Ripple Rug logo in order for Defendants to pass-off the product as their own. In one instance, Krissy Bernhardi asked James Barton if he could digitally add a cat's head and make it poke out of a hole of the Ripple Rug on each shot, in this way, resembling many SnugglyCat's Ripple Rug product images. The original Ripple Rug image and digitally retouched Purr N Play image, with added cat, are depicted below:

CORE/3508316.0002/142123725.1



57.     On February 23, 2017, SnugglyCat and Ruckel sent a cease-and-desist letter to Defendants.

58.     Defendants responded to the letter on March 1, 2017, stating that "Opfer Communications has discontinued all efforts to market, promotion and sale of its PURR N PLAYTM product". However, the 60-second cut-down version of the deceptive Purr N Play infomercial remains available online at www.ispot.tv/brands/ngm/purr-n-play.

59.     As a result of Defendants' aforementioned acts, consumers and potential consumers have been and/or are likely to be, confused as to the source of Defendants' products and/or deceived as to the nature and characteristics of the products sold by Defendants.

60.     Defendants' bad acts have caused and will continue to cause irreparable harm to SnugglyCat and the goodwill it owns in the Ripple Rug® mark. SnugglyCat has also experienced a reduction in sales as a result.

16

# COUNT I
## (TRADEMARK INFRINGEMENT WITH A
## COUNTERFEIT MARK, 15 USC §§ 1114 and 1125)

61.     Plaintiff repeats and realleges the allegations contained in Pargraphs 1 through 60 above.

62.     Defendants have falsely used SnugglyCat's Ripple Rug product and images thereof to advertise their non-existent Purr N Play product.

63.     Defendants did so knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale, and/or distribution of the non-existent Purr N Play product.

64.     Defendants' use of the Ripple Rug and images thereof to advertise the Purr N Play deceives, or has a tendency to deceive, a substantial portion of customers into believing that the Purr N Play is the same product as the Ripple Rug and is identical to the Ripple Rug, when it is not, and results in Defendants unfairly benefitting and profiting from the reputation of SnugglyCat's Ripple Rug product and registered marks all to the substantial injury of the public, SnugglyCat, SnugglyCat's marks, and the substantial goodwill associated with those marks.

65.     Defendants used the counterfeit false advertising in interstate commerce.

66.     Defendants' false use of the Ripple Rug product and its images in advertisements has causedconfusion or mistake, and has actually deceived and or misled customers as to the affiliation, connection, or association of its products or as to the origin, sponsorship, or approval by SnugglyCat of Defendants' products or commercial activities.

67.     Defendants' use of SnugglyCat's exact design and trademark in connection with the advertising and sale of the non-existent Purr N Play constitutes a counterfeit mark, as defined by 15 U.S.C. § 1116(d)(1)(B).

CORE/3508316.0002/142123725.1

68.     Defendants' false use of the Ripple Rug product and images thereof in its advertisements constitutes counterfeiting in violation of 15 U.S.C. § 1114.

69.     Defendants' unlawful conduct has been intentional, willful, and malicious.

70.     Defendants' use of Plaintiff's registered trademark and service mark has caused irreparable harm and damage to Plaintiff and, unless restrained by this Court will continue to damage Plaintiff.

71.     By reason of the foregoing, Defendants are liable to SnugglyCat for statutory damages in the amount of at least $1,000 and up to $2,000,000 for each mark willfully counterfeited, as provided by 15 U.S.C. § 1117(c).

## COUNT II
## (PASSING OFF IN VIOLATION
## OF SECTION 43(a) OF THE LANHAM ACT)

72.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 71 as if fully set forth herein.

73.     By using Plaintiff's product and images thereof in Defendants' infomercial, websites, and social media, Defendants passed off, and attempted to pass off, Plaintiff's Ripple Rug as Plaintiff's Purr N Play.

74.     Defendants' improper use of the SnugglyCat Ripple Rug® in connection with the sale of the Purr N Play advertising has caused and is likely to cause confusion or mistake or to deceive as to the affiliation, connection, or association of Defendants with SnugglyCat, as to the origin, sponsorship, or approval of Defendants' goods. Potential and actual consumers have believed and are likely to have believed that Plaintiff authorized or controlled the sale, offering, or provision of Defendants' goods, or that Defendants were associated with or authorized by Plaintiff to sell, offer, or provide those goods.

18

75.     Defendants' actions, thus, constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.     Defendants actions were intentional and willful in that they knew their actions would be likely to cause confusion, mistake and deception among consumers. Defendants' willfulness makes this case an exceptional case, entitling Plaintiff to enhanced damages and attorneys' fees.

## COUNT III
## (FALSE ADVERTISING IN VIOLATION
## OF SECTION 43(a) OF THE LANHAM ACT)

77.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 76 as if fully set forth herein.

78.     Defendants have falsely used images of SnugglyCat's Ripple Rug® product and actual Ripple Rug products to advertise the fictional and non-existent Purr N Play product.

79.     Defendants' use of images of the Ripple Rug and use of actual Ripple Rugs deceives and/or is likely to deceive a substantial portion of consumers into believing that the two products are the same, though they are not.

80.     This deception is material, because it concerns the inherent quality and identity of the products.  Therefore, it has influenced is likely to influence the purchasing decisions of consumers and potential consumers.

81.     Defendants have falsely advertised in interstate commerce.

82.     This deception has injured, and is likely to continue injuring, both customers and SnugglyCat.

83.     Defendants' false use of the Ripple Rug product and images thereof in its advertisements has caused or is likely to cause confusion or mistake, or to deceive or mislead

19

customers as to the affiliation, connection, or association of its products or as to the origin, sponsorship, or approval by SnugglyCat of Defendants' products or commercial activities.

84.     Defendants' false use of the Ripple Rug product and images thereof in its advertisements constitutes false advertising in violation of 15 U.S.C. § 1125(a).

85.     Defendants' unlawful conduct has been intentional and willful, making this an *exceptional case* under 15 U.S.C. § 1117 and entitling SnugglyCat to an award of its reasonable attorneys' fees.

86.     Defendants' acts have greatly and irreparably damaged SnugglyCat and will continue to do so unless restrained by this Court.

## COUNT IV
## (COMMON LAW UNFAIR COMPETITION)

87.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 86 as if fully set forth herein.

88.     Defendants' actions, including infringement, passing off, counterfeiting, and false advertising, and other bad acts all constitute unfair competition under the common law of the United States and the State of Missouri.

89.     The aforementioned actions and other bad acts were committed willfully, knowingly, maliciously, and in conscious disregard of SnugglyCat's rights.

90.     The aforementioned actions and other bad acts have caused irreparable injury to SnugglyCat's property and business, and unless restrained by this Court, will continue to cause such harm.

91.     Defendants' actions were intentional, and Defendants acted with evil motive or with reckless indifference to the rights of SnugglyCat and others. Defendants showed complete

20

indifference or conscious disregard for the rights of SnugglyCat and others. Defendants' actions entitle Plaintiff to punitive damages.

92. SnugglyCat has no adequate remedy at law.

## COUNT V
## (CIVIL CONSPIRACY)

93. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 92 as if fully set forth herein.

94. Defendants Opfer Communications, Opfer, and Robertson used the Ripple Rug product and images thereof to mislead consumers into believing that the Ripple Rug was the non-existent Purr N Play and to exploit the goodwill and reputation of SnugglyCat.

95. To do so, they engaged in infringement, false advertising, passing off, counterfeiting, unfair competition, and other bad acts.

96. Defendant The Bargain Show knew of these bad acts and, by assisting in the creation and execution of the false Purr N Play infomercial (among other acts), acted in furtherance of the other Defendants' bad acts.

97. The object to be accomplished by the actions of all of the Defendants' was to facilitate the improper use of the Ripple Rug and images thereof to market the fictional Purr N Play to unsuspecting customers and to use the goodwill and reputation of SnugglyCat to profit from sales of a non-existent product: the Purr N Play.

98. The Defendants had a meeting of the minds as to that object and the necessary course of action.

99. The Defendants committed one of more unlawful and overt acts including, but not limited to:

      a.      Infringing upon the Ripple Rug trademark;

21

b.      Passing off the Ripple Rug as the non-existent Purr N Play;

c.      Counterfeiting the Ripple Rug mark and product;

d.      Engaging in false advertising;

e.      Unfairly competing with SnugglyCat by attempting to convince target audiences that the Purr N Play was the Ripple Rug; and

f.      Engaging in predatory pricing techniques to convert potential buyers of the Ripple Rug to the Purr N Play product.

100.    SnugglyCat suffered, and continues to suffer, damages as the proximate result of the conspiracy consummated by and among the Defendants.

101.    Defendants' actions were intentional, and Defendants acted with evil motive or with reckless indifference to the rights of others. Defendants showed complete indifference or conscious disregard for the rights of others. Defendants' actions entitle Plaintiff to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, SnugglyCat, prays for judgment:

1.      Defendants, their officers, agents, servants, employees, representatives, attorneys, their successors and assigns, and all other persons, firms, or corporations in active concert or participation with Defendants who receive notice hereof, including but not limited to all subsidiaries, affiliates, and licensees of Defendants, be permanently enjoined from:

a.      directly or indirectly engaging in unfair competition involving the Ripple Rug® Mark, and specifically:

i.      using the Ripple Rug® Mark, or any reproduction, counterfeit, copy, or colorable imitation of the Ripple Rug® Mark, in connection with the

22

offering, promotion, marketing, or sale of Defendants' Purr N Play product or any similar product;

       ii.      applying the Ripple Rug® Mark, or any reproduction, counterfeit, copy, or colorable imitation of the Ripple Rug® Mark, to any advertisement, website, point of purchase materials, catalogue, brochure, sign, print, press release, or other material used in connection with the promotion, sale, and/or offering for sale of Defendants' Purr N Play products or any similar product;

       b.      engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive consumers, to believe that Defendants or any of Defendants' products are sponsored, approved, or licensed by SnugglyCat, or are in some way connected or affiliated with the Ripple Rug® Mark;

       c.      affixing, applying, annexing, or using in connection with the promotion, advertising, sale, and/or offering for sale of Defendants' Purr N Play product or similar products a false description or representation or misleading statement of fact that misrepresents the nature, qualities, characteristics, standard, grade, style, or model of such goods or services;

       d.      destroying or otherwise disposing of evidence until final determination of this action, including:

       i.      any products offered for sale in connection with the Purr N Play marketing campaign;

       ii.      any promotional or advertising materials, packaging labels, website versions relating to the Purr N Play product; and

iii.     any sales records, ledgers, invoices, purchase orders, advertising agency contracts or placement orders, inventory control documents, recordings of any type whatsoever, and all other business records and documents concerning the promotion, sale or offering for sale of the Purr N Play product, or any other products sold or offered in connection with that product.

2.     Defendants, and all others holding by, through, or under Defendants, be required, jointly and severally, to:

a.     account for and pay over to SnugglyCat all profits derived by Defendants from their acts of trademark infringement, passing off, unfair competition and false advertising, in accordance with 15 U.S.C. § 1117(a);

b.     pay to SnugglyCat the amount of all damages incurred by SnugglyCat by reason of Defendants' acts of trademark infringement, passing off, unfair competition and false advertising, in accordance with 15 U.S.C. § 1117(a);

c.     pay to SnugglyCat treble damages for the use of a counterfeit mark, in accordance with 15 U.S.C. § 1117(b);

d.     pay to SnugglyCat statutory damages for the use of a counterfeit mark, in accordance with 15 U.S.C. § 1117(c);

e.     pay to SnugglyCat enhanced damages, in accordance with 15 U.S.C. § 1117(a);

f.     pay to SnugglyCat reasonable attorneys' fees, in accordance with 15 U.S.C. § 1117(a);

g.     pay to SnugglyCat punitive damages;

24

h.      for an order requiring Defendants to correct the erroneous impression consumers have derived concerning the nature, characteristics or qualities of the Purr N Play product, including, without limitation, the placement of corrective advertising and providing written notice to the public;

i.      pay to SnugglyCat costs of suit;

j.      for prejudgment and post judgment interest; and

k.      for SnugglyCat to have such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff SnugglyCat hereby demands a trial by jury on all issues and claims so triable.

Dated: August 28, 2018

Respectfully submitted,

**STINSON LEONARD STREET LLP**

*/s/ David R. Barnard*
David R. Barnard, MO #47127
Katherine A. Bechina, MO #68100
1201 Walnut Street, Suite 2900
Kansas City, MO 64106-2150
Telephone: 816-842-8600
Facsimile: 816-691-3495
david.barnard@stinson.com
katherine.bechina@stinson.com

25

**PHILLIPS & SUTHERLAND, LLP**

Paula Brillson Phillips – Pro Hac Vice
Jessica M Sutherland – Pro Hac Vice
817 Broadway, 4th Fl., New York, NY 10003
Tele: 347-685-9913
paula@digitallawgroup.com
jessica@digitallawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2018, a copy of the above and foregoing was serviced via the Court's CM/ECF System, which sent notice to all parties receiving electronic notices.

*/s/  David R. Barnard*
Attorney for Plaintiff

CORE/3508316.0002/142123725.1